IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

DAVID ARMSTRONG, JR.,                        *

    Plaintiff,                           *

        v.                        *        CIVIL NO.: WDQ-11-3380

                     *

KENNEDY KRIEGER INSTITUTE, INC.,             *

    Defendant.                           *

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

MEMORANDUM OPINION

David Armstrong, Jr., on behalf of himself and others similarly situated, sued Kennedy Krieger Institute ("KKI") for fraud and other claims in state court. For the following reasons, Armstrong's motion to remand will be granted and the action, and all other pending motions, will be remanded to the Circuit Court for Baltimore City. KKI's motion for leave to file a surreply and Armstrong's motion for attorneys' fees will be denied.[1] KKI's motions to seal will be granted in part.

I.    Background[2]

In 1993, KKI, a hospital in Baltimore City, won a contract from the Environmental Protection Agency ("EPA") to study the efficacy of residential lead-based paint repairs and interventions. ECF No. 2 ¶30. KKI began a nontheraputic

---

[1] Armstrong's request for a hearing will be denied as unnecessary. ECF No. 35 at 7.

[2] The facts alleged in the complaint are accepted as true.

research program on children, known as The Lead-Based Paint Abatement and Repair and Maintenance Study in Baltimore ("the R&M Study"). ECF No. 2 ¶¶1, 5. The R&M Study examined lead poisoning in children in Maryland by studying the effect of different levels of lead, and types of lead abatement processes, in the homes of minor children in Baltimore City. *Id.* ¶2.

In the R&M Study, KKI paid landlords to remove some, but not all, of the lead paint in older homes in the City, creating a population of test homes with varying levels of lead paint ("partially abated homes"). *Id.* ¶5. KKI then arranged for families with young children to rent the partially abated homes, live there for at least two years, and have the children's blood periodically tested for lead contamination. *Id.* ¶¶6-7.

For living in the homes, the parents were promised that KKI would conduct "special repairs" on the home and take dust, soil, water, and blood samples throughout the study. *Id.* ¶62. KKI offered to discuss lead testing results for each home and "steps that [the parents] could take to reduce risks of [lead] exposure." *Id.* Further, KKI offered the families, many of whom were economically disadvantaged, money, food stamps, gift certificates, toys, rent payments, and other gifts to keep the children in the partially abated apartments. *Id.* ¶63.

Although the parents of children in the study signed consent agreements, the agreements lacked a "complete and clear

2

explanation" that the R&M Study would involve measuring the level of lead contamination in the children's blood. *Id.* ¶13. KKI did not tell the parents that there was a risk of harm to the children, and implied that the children would be treated for lead poisoning and moved to lead-free homes if they were lead poisoned. *Id.* ¶¶64-65.

Armstrong and other child participants in the R&M Study were poisoned by the lead in the partially abated homes, which caused permanent neurological damage and other injuries. ¶68.

On September 15, 2011, Armstrong sued KKI in a class action complaint in the Circuit Court for Baltimore City, alleging fraud, negligent misrepresentation, negligence, battery, and a violation of the Maryland Consumer Protection Act. ECF No. 2. The parties filed several motions in the Circuit Court. *See* ECF Nos. 4, 5, 7, 8. On November 22, 2011, KKI removed the action to this Court pursuant to 28 U.S.C. § 1441(a), arguing that the action raises a federal question. ECF No. 1. On November 29, 2011, KKI moved to dismiss the action for failure to state a claim. ECF No. 21. On December 8, 2011, Armstrong moved to remand to the Circuit Court. ECF No. 35. KKI moved for leave to file a surreply to the motion to remand. ECF No. 49.

KKI moved to seal its motion to disqualify Armstrong's counsel, William Murphy, Jr., Esq., because of a conflict of interest, and to seal its memorandum in support of the motion.

ECF Nos. 5, 18.  Armstrong opposed the motions.  ECF Nos. 24,

25.  KKI moved to seal the subsequent filings related to the

motion to disqualify; Armstrong did not oppose that motion.  ECF

No. 30.

The motions are opposed, and several related motions are

also pending.[3]

II.  Analysis

A.  The Motion to Remand

KKI contends that, because federal law completely pre-empts

state law with respect to studies performed pursuant to the Lead

Reduction Act, removal was proper under 28 U.S.C. § 1441.  ECF

No. 43 at 3 n.1.

1.  KKI May Not File a Surreply

KKI has moved for leave to file a surreply to Armstrong's

reply in support of remand.  ECF No. 49.  It argues that

Armstrong raised new legal arguments and made "material misrep-

resentations of fact" in his reply brief.  *Id.* at 1.  Armstrong

counters that his reply brief "merely . . . respon[ded] to

arguments made in KKI's" response in opposition to the motion to

remand.  ECF No. 50 at 2.

---

[3] They are: KKI's motions to disqualify Armstrong's counsel, (ECF
No. 5), strike the motion for leave to file a surreply (ECF No.
41), and Armstrong's motions for an extension of time to respond
to KKI's motion to dismiss (ECF No. 37), and for leave to file a
surreply to the motion to dismiss (ECF No. 40).

Unless otherwise ordered by the court, a party generally may not file a surreply. Local Rule 105.2 (a) (D. Md. 2011). Leave to file a surreply may be granted when the movant otherwise would be unable to contest matters presented for the first time in the opposing party's reply. *Khoury v. Meserve*, 268 F. Supp. 2d 600, 605 (D. Md. 2003), *aff'd*, 85 F. App'x 960 (4th Cir. 2004).

KKI contends that Armstrong raised three new issues in his reply: (1) the EPA did not control the challenged aspects of the R&M Study, (2) Judge Nickerson's opinions remanding other cases against KKI should govern this Court's decision, and (3) KKI should be barred from relying on 15 U.S.C. § 2617 for federal question jurisdiction because it was not raised in the notice of removal.

Armstrong's response does not raise new legal arguments; he raised two of the "new" arguments--the extent of federal control over the R&M Study, and Judge Nickerson's opinions remanding similar cases--in his motion to remand. ECF No. 35 at 3, 5. KKI argued that 15 U.S.C. § 2617 provides federal subject matter jurisdiction for the action. ECF No. 43 at 10. Armstrong's argument that KKI failed to raise that statute in its notice of remand merely responded to KKI's argument. Thus, none of the legal arguments raised in the reply is new. Also, the issues that KKI raised in its motion for leave to file a surreply--

5

whether KKI properly raised 15 U.S.C. § 2617 in its notice of removal, the extent of federal control over the challenged aspects of the R&M Study, and the grounds on which Judge Nickerson remanded the other actions-- are not, as discussed below, relevant.

The motion for leave to file a surreply will be denied.

2.   Legal Standard

A party may remove to federal court "any civil action brought in a State court of which the district courts of the United States have original jurisdiction."  28 U.S.C. § 1441(a) (2006).  The district courts "have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."  *Id.* § 1331.  This includes cases in which a federal right or immunity is an essential element of the cause of action, and a narrow class of cases in which "the subject matter of a putative state law claim has been totally subsumed by federal law—such that state law cannot even treat on the subject matter."  *Lontz v. Tharp*, 413 F.3d 435, 439-40 (4th Cir. 2005).

A removing party bears the burden of showing that the district court has jurisdiction over the action.  *Strawn v. AT&T Mobility, LLC*, 530 F.3d 293, 296 (4th Cir. 2008); *Mulcahey v. Columbia Organic Chems. Co.*, 29 F.3d 148, 1994 (4th Cir. 1994).  "Because removal jurisdiction raises significant federalism

concerns, [the court] must strictly construe removal

jurisdiction." *Mulcahey*, 29 F.3d at 151.

> 3.   Jurisdictional Pre-Emption

There is a rare corollary to federal question jurisdiction,

*complete* federal pre-emption of state law, in which "any claim

purportedly based on that pre-empted state law is considered,

from its inception, a federal claim, and therefore arises under

federal law." *Caterpillar*, 482 U.S. at 393.[4]  The "pre-emptive

force of a statute [must be] so extraordinary that it converts

an ordinary state common-law complaint into one stating a

federal claim."  *Id.*

---

[4] Under the traditional, "essential element" form of federal
question jurisdiction, "federal jurisdiction exists only when a
federal question is presented on the face of the plaintiff's
properly pleaded complaint."  *Caterpillar, Inc. v. Williams*, 482
U.S. 386, 392 (1987).  In recognizing the power to remove on the
basis of complete pre-emption, the Supreme Court emphasized that

> it is . . . settled law that a case may *not* be removed
> to federal court on the basis of a federal defense
> *including the defense of pre-emption*, even if the
> defense is anticipated in the plaintiff's complaint,
> and even if both parties concede that the federal
> defense is the only question truly at issue.

*Id.* at 393 (second emphasis added); *see also Beneficial Nat'l
Bank v. Anderson*, 539 U.S. 1, 6 (2003) ("[A] defense that relies
on the preclusive effect of a prior federal judgment, or the
pre-emptive effect of a federal statute, will not provide a
basis for removal.").
    KKI's belief in an actual conflict between the state cause
of action and studies conducted pursuant to the Lead Reduction
Act--ECF No. 43 at 17--does not establish complete pre-emption
or determine the remand decision.

Ordinary pre-emption is not a basis for removal, "even if [it] forms the very core of the litigation"; complete pre-emption, on the other hand, is a "jurisdictional doctrine."[5] *Lontz*, 413 F.3d at 440-42; *see also Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 6 (2003). Thus, the law of "'conflict' or 'ordinary' preemption" is not relevant to the doctrine of complete pre-emption. *See Lontz*, 413 F.3d at 440.[6]

To establish complete pre-emption, the defendant "must establish congressional intent to extinguish similar state claims by making [a] federal cause of action exclusive." *Lontz*, 413 F.3d at 441. The pre-emption must be so broad that "state law cannot even treat on the subject matter." *Id.* at 439-40. The defendant's "burden, then, is to demonstrate that a federal statute indisputably displaces any state cause of action over a given subject matter." *Id.* at 440. "[T]he congressional intent

---

[5] The Supreme Court has found complete pre-emption in only three statutes: ERISA § 502(a), Labor Management Relations Act § 301, and the National Bank Act. *Lontz*, 413 F.3d at 441. The Fourth Circuit has held that the Copyright Act, 17 U.S.C. § 301(a) completely pre-empts state law claims on copyright issues. *Id.*

[6] For this reason, KKI's reliance on *Altria Grp., Inc. v. Good*, 555 U.S 70 (2008), *Riegel v. Medtronic, Inc.*, 552 U.S. 312 (2008), *Bates v. Dow Agrosciences LLC*, 544 U.S. 431 (2005), *Geier v. Am. Honda Motor Co., Inc.*, 529 U.S. 861 (2000), and *Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504 (1992), each of which discusses conflict pre-emption, is misplaced. *See* ECF No. 43 at 7, 9.

that state law be entirely displaced must be clear in the text of the statute."[7]   *Id.* at 441.

Generalized language of Congressional interest in national cohesion is insufficient to overcome the presumption against jurisdictional pre-emption.   *See Lontz*, 413 F.3d at 440.   The federal law must "provide[] the exclusive cause of action," *id.* and to do that there must be specific language of a cause of action that applies to the facts alleged and a "longstanding" understanding that the cause of action pre-empts state law.[8]

If the defendant identifies a statute with jurisdictional pre-emptive force, the Court looks to "the elements of the state law causes of action . . . [to] determine whether resolution of [the] state law claims requires interpretation of [the pre-empting federal law]."   *McCormick v. AT&T Techs., Inc.*, 934 F.2d 531, 535 (4th Cir. 1991).

---

[7] For example, the Labor Management Relations Act § 301 states that "the federal district courts have plenary jurisdiction, without regard to citizenship or amount in controversy."   *Lontz*, 413 F.3d at 443.

[8] *See Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 6-7 (2003) (noting that § 301 of the LMRA and § 502(a) of ERISA include explicit grants of federal jurisdiction, and ERISA's legislative history "unambiguously described an intent to treat [benefit claims] as arising under the laws of the United States"; holding that § 86 of the National Bank Act, 12 U.S.C. § 86, which created a federal cause of action, and which the Court had a "longstanding and consistent construction . . . as providing an exclusive federal cause of action," completely pre-empted state usury regulation and actions).

4.    Express Pre-Emption

KKI contends that § 2617(a) of the Toxic Substances Control Act ("TSCA") expressly and completely pre-empts all state law on causes of action challenging studies performed pursuant to the Residential Lead-Based Paint Hazard Reduction Act ("the Lead Reduction Act").   ECF No. 43 at 3 n.1, 10.

The Lead Reduction Act was enacted as Title X of the Housing and Community Development Act of 1992.   Pub. L. No. 102-550.   It added to the TSCA,[9] and created new regulations codified at 42 U.S.C. § 4851 *et seq.* and 15 U.S.C. 2681 *et seq.*   See Pub. L. 102-550, 1992 HR 5334 § 1021(a) (102d Cong., 2d Sess.).

The TSCA pre-empts state "requirements" for the testing of a chemical substance or mixture if the Administrator of the EPA issues a rule requiring testing of the substance under 15 U.S.C. § 2603.   15 U.S.C. 2617(a)(2)(A).   Section 2603 gives the Administrator the power to require manufacturers and processors of the substances to conduct testing.   15 U.S.C. § 2603(b) (3)(B).   It does not apply to research institutions which contract directly with the EPA.   *See id.*   Sections 2603 and 2617 also were not amended by the Lead Reduction Act.   *See* 15 U.S.C.

---

[9] At 15 U.S.C. §§ 2606, 2610, 2612, 2615-16, 2618-19, 2681-92. Pub. L. 102-550 § 1021(a).

§§ 2603, 2617 (history: the sections were last amended in 1986).[10]

Further, the Lead Reduction Act contains its own set of directives for hazard evaluation and reduction studies, and thus does not necessarily depend on the TSCA.  *See* 42 U.S.C. § 4582c.

The TSCA does not expressly pre-empt Armstrong's action.

5.    Implied Pre-Emption

Next, KKI argues that the Lead Reduction Act impliedly creates jurisdiction by pre-emption.  ECF No. 43 at 14.

In passing the Lead Reduction Act, Congress concluded that lead poisoning affected up to three million children under age six, particularly in minority and low-income communities, causing intelligence quotient deficiencies, reading and learning disabilities, and other injuries.  42 U.S.C. § 4851(1), (2).  It announced a "national goal of eliminating lead-based paint hazards in housing."  *Id.* § 4851(8).

The purposes of the Lead Reduction Act include "develop-[ing] a national strategy to build the infrastructure necessary to eliminate lead-based paint hazards in all housing as expedi-tiously as possible" and "reorient[ing] the national approach to

---

[10] Because the Toxic Substances Control Act does not apply, whether KKI waived it by failing to explicitly cite it in its Notice of Removal is irrelevant.

11

the presence of lead-based paint in housing to implement, on a
priority basis, a broad program to evaluate and reduce lead-
based paint hazards in the Nation's housing stock." *Id.* §
4851a(1), (2).

The TSCA creates a federal remedy for violations of TSCA or
any rule promulgated under the Lead Exposure Reduction
subchapter, which is part of Lead Reduction Act.  15 U.S.C. §
2619(a).  However, Armstrong has not alleged violations of that
subchapter or the TSCA.  *See* ECF No. 2; 15 U.S.C. §§ 2683-92.[11]

The Lead Reduction Act provides a remedy for tenants who
claim that their lessors failed to (1) provide them with a lead
hazard information pamphlet, or (2) disclose the presence of
known lead-based paint or paint hazards and provide a lead
hazard evaluation report if one is available to the lessor.  42
U.S.C. § 4852d(a)(1)(A)-(B), (a)(3).  However, even if KKI were
a "lessor," there is no "longstanding" understanding that claims

---

[11] Most of the sections in the subchapter apply to the EPA
Administrator, Secretary of Health and Human Services, or
federal government activity.  *See* 15 U.S.C. §§ 2683-85, 2686(a),
2687-88, 2690.  Section 2686(b) applies to persons who
"perform[] for compensation a renovation" of housing built
before 1978, but requires only that they provide a lead hazard
information pamphlet to the owner and occupants of the housing
before beginning renovations.  *Id.* § 2686(b).  The complaint
does not allege that the study participants did not receive lead
hazard pamphlets; it alleges that the study consent forms failed
to reveal that KKI would intentionally fail to remove all the
lead from the apartment, and falsely suggested that KKI would
treat the participants for lead poisoning.  ECF No. 2 ¶¶12-15,
64-66, 72, 85.

under the Act are exclusively within federal jurisdiction.[12]

Accordingly, KKI has not overcome the presumption against

complete pre-emption.

> 6.    There is No Substantial Question of Federal Law

KKI also contends that the Court has jurisdiction because

the complaint raises a substantial federal question.   ECF No. 43

at 22.

Federal district courts have original jurisdiction over

"state law claims that implicate significant federal issues."

*Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S.

308, 312 (2005).   However, the "mere need to apply federal law

in a state-law claim" does not create a substantial federal

question.   *Id.* at 313.   The action must "really and

substantially involve a dispute or controversy respecting the

validity, construction or effect of federal law."   *Id.* (internal

quotation marks and citations omitted).[13]   That a defendant will

---

[12] *See Wallace v. United States*, 335 F. Supp. 2d 252, 258-61
(D.R.I. 2004) (considering Lead Reduction Act claims with common
law negligence claims based on same facts); *Graham Court Owners
Corp. v. Powell*, 804 N.Y.S.2d 530, 531-32 (N.Y. App. Term 2005)
(applying § 4852d(a)(1) in state court proceeding after
concluding that federal courts do not have exclusive
jurisdiction).
[13] In *Grable*, the plaintiff brought an action to quiet title,
alleging that it held superior title because the IRS had failed
to give it adequate notice, "as defined by federal law," of its
seizure of the property.   Thus,
> [w]hether Grable was given notice within the meaning
> of the federal statute is thus an essential element of
> its quiet title claim, and the meaning of the federal

likely raise federal law as an affirmative defense does not create a substantial federal question, even if the "complaint begs the assertion of the defense, and even if 'the defense is the only question truly at issue in the case.'" *Pinney v. Nokia*, 402 F.3d 430, 446 (4th Cir. 2005) (*quoting Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 14 (1983)).

KKI contends that Armstrong "is essentially seeking to invalidate the interwoven combination of federal law, regulation, and policy pursuant to which the R&M Study was conducted." ECF No. 43 at 23.

---

statute is actually in dispute; it appears to be the only legal or factual issue contested in the case. The meaning of the federal tax provision is an important issue of federal law that sensibly belongs in a federal court. The Government has a strong interest in the "prompt and certain collection of delinquent taxes," *United States v. Rodgers*, 461 U.S. 677, 709 (1983), and the ability of the IRS to satisfy its claims from the property of delinquents requires clear terms of notice to allow buyers like Darue to satisfy themselves that the Service has touched the bases necessary for good title. The Government thus has a direct interest in the availability of a federal forum to vindicate its own administrative action, and buyers (as well as tax delinquents) may find it valuable to come before judges used to federal tax matters. Finally, because it will be the rare state title case that raises a contested matter of federal law, federal jurisdiction to resolve genuine disagreement over federal tax title provisions will portend only a microscopic effect on the federal-state division of labor. *Grable*, 545 U.S. at 315.

Armstrong's affirmative claims do not raise a substantial federal question. The complaint does not allege that KKI either violated federal standards creating a cause of action, or that KKI followed standards that were "wrongful and caused actionable injury."[14] Instead, it alleges that KKI chose to implement the Study in a tortious manner. *See* ECF No. 2 ¶¶ 12-13, 85, 91. KKI may raise the federal regulations as an affirmative defense, but, as with jurisdictional pre-emption, that defense does not create federal jurisdiction. *Pinney*, 402 F.3d at 445-46. Accordingly, the Court would not have had original jurisdiction over this action. It will be remanded.

B.    Attorney's Fees are Not Appropriate

Under 28 U.S.C. § 1447(c), the Court may require "payment of just costs and any actual expenses, including attorney['s] fees, incurred as a result of the removal." The Court should award attorney's fees and costs[15] "only whe[n] the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005).

Armstrong contends that "the grounds asserted for removal in this case have already been decided by this Court" because

---

[14] ECF No. 43 at 23.

[15] The Tenth Circuit noted that the District Court in *Martin* had denied attorney's fees and costs, and affirmed denial of both. *Martin v. Franklin Capital Corp.*, 393 F.3d 1143, 1144 (10th Cir. 2004).

Judge Nickerson remanded three other actions against KKI, two of which involved the R&M Study. ECF No. 48 at 29. However, KKI removed those cases pursuant to the federal officer removal statute. *See Wallace v. Kennedy Krieger Inst.*, No. WMN-07-1140, ECF No. 42 (D. Md. Aug. 14, 2007); *Covington v. Kennedy Krieger Inst.*, No. WMN-07-1761, ECF No. 32 (D. Md. Oct. 12, 2007). Thus, Judge Nickerson considered the level of governmental oversight to determine whether KKI "acted under the direction of a federal officer. *See Wallace*, ECF No. 42 at 6, 7-10.[16]

Here, KKI removed under 28 U.S.C. § 1441, and the extent of federal involvement in the R&M Study was not determinative. *See* Part II.A.6, *supra*. Accordingly, Judge Nickerson had not decided the KKI's grounds for removal when KKI removed this action. KKI's removal was not objectively unreasonable; attorney's fees and costs will not be awarded. *See Martin*, 546 U.S. at 141.

C. The Motions to Seal will be Granted in Part

KKI moved to seal its memorandum of law in support of its motion to disqualify Armstrong's counsel, ECF No. 18, and KKI's filings opposing the motions to disqualify counsel and seal, ECF No. 30. Armstrong did not file an opposition to the second

---

[16] KKI also argued that the Court had federal question juris-diction, but did not raise the Lead Reduction Act, jurisdic-tional pre-emption, or the existence of a substantial federal question. *See Wallace*, ECF No. 42 at 11-13.

motion to seal.  Accordingly, filings 24 through 29 will be sealed.

KKI wishes to seal the memorandum in support of the motion to disqualify Murphy--and several attached exhibits--because they reveal KKI's "strategy for defending personal injury lawsuits," attorney work product, and information protected by the attorney-client privilege related to this and other actions against KKI.  ECF No. 18 at 2.  Armstrong opposes sealing KKI's memorandum in support of the motion to disqualify counsel because it argues that the unsealed motion contains "baseless . . . defamatory and grossly misleading comments about plaintiff's counsel," to which plaintiff counsel should be allowed to respond publicly.  ECF No. 24 at 1 (sealed).[17]

Under Local Rule 105.11, a motion to seal must provide factual representations justifying sealing, and explain why alternatives will not sufficiently protect the information.  The Court weighs the public's right of access against the parties' rights to protect confidential information.  *Minter v. Wells Fargo Bank, N.A.*, 258 F.R.D. 118, 121-22 (D. Md. 2009).

---

[17] Citing Maryland Rule 16-1009(b) and (c), Armstrong also argues that the document is a public record because it was filed under temporary seal in the Circuit Court for Baltimore City and KKI did not file a second motion to seal within five days.  ECF No. 23 at 1-3.  However, Rules 16-1009(b) and (c) do not require a moving party to file a follow-up motion to seal; the five-day time limit applies to the court's consideration of the original motion.  *See* Md. Rule 16-1009.

The memorandum and exhibits A and H contain information about KKI's general litigation strategies that would be prejudicial if they became available to the general public.[18] The other exhibits contain no specific information about KKI's strategies, or privileged information, stating only that KKI shared "privileged information," "strategies," or "the results of focus group findings." *See, e.g.*, ECF No. 6-3.  Accordingly, the memorandum and exhibits A and H will be sealed.  The motion to seal will be denied in all other respects.

D.    Other Pending Motions Will be Remanded

As the Court will remand the action to the Circuit Court for Baltimore City, the remaining pending motions will also be remanded.

III. Conclusion

For the reasons stated above, Armstrong's motion to remand will be granted.  Attorney's fees and costs will not be awarded. KKI's motions to seal will be granted in part.  All other pending motions will be remanded.

_____
Date.        4/27/12

_____
William D. Quarles, Jr.
United States District Judge

---

[18] The Court will not reveal that information in this unsealed opinion.